IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**DEVERICK SCOTT**     **PLAINTIFF**
**ADC #131042**

v.     No: 4:20-cv-00092 DPM-PSH

**JONATHAN VINEYARD**     **DEFENDANT**

## PROPOSED FINDINGS AND RECOMMENDATION

## INSTRUCTIONS

The following Recommendation has been sent to Chief United States District Judge D.P. Marshall Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

### I. Introduction

Plaintiff Deverick Scott filed this *pro se* 42 U.S.C. § 1983 action while incarcerated at the Arkansas Division of Correction's (ADC) Varner Supermax

Unit.[1]  After screening Scott's Second Amended Complaint (Doc. No. 8), the Court determined that Scott could proceed with a retaliation claim against Jonathon Vineyard but dismissed his other claims.  *See* Doc. No. 11.

Before the Court is Vineyard's motion for summary judgment, brief in support, and statement of undisputed material facts (Doc. Nos. 31-33); Scott's response, brief in support, and statement of disputed facts (Doc. No. 37-39); Vineyard's reply (Doc. No. 40); and Scott's objections (Doc. No. 41).  For the reasons described herein, the undersigned recommends that Vineyard's motion for summary judgment be granted.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann*

---

[1] Scott is currently incarcerated at the ADC's East Arkansas Regional Unit.  *See* Doc. No. 70 in *Scott v. Gibson,* Case No. 5:19-cv-00280 JM-PSH.

*v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". FED. R. CIV. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Facts

1. Plaintiff Deverick Scott was incarcerated at the ADC's Varner Supermax Unit at all times relevant to this lawsuit. *Second Amended Complaint* (Doc. No. 8).

2. Defendant Jonathan Vineyard was employed by the ADC as a correctional officer at the Varner Supermax Unit at all times relevant to this lawsuit. *Answer* (Doc. No. 21) at ¶ 5.

3. In August and September of 2019, Vineyard was assigned to the barracks that housed inmates Scott and Obama-Prowse. *Vineyard Affidavit* (Doc. No. 31-1) at ¶ 2.

4. Scott submitted Grievance No. VSM19-02307 (the "PREA Grievance") on August 25, 2019, claiming that Vineyard and Obama-Prowse were having an inappropriate sexual relationship. *Grievance No. VSM19-02307* (Doc. No. 31-2 at 15-20). Because it contained allegations of a sexual nature, it triggered an investigation under the Prison Rape Elimination Act (PREA). *Incident Report Summary and PREA Investigation Documents* (Doc. No. 31-2 at 1-14).

5. Vineyard was aware that Scott had filed the PREA grievance against him regarding events alleged to have occurred in August 2019. *Vineyard Affidavit* at ¶ 3.

6. Vineyard claims he never acted inappropriately with Obama-Prowse and did not participate in any form of sexual actions with Obama-Prowse or spend any time at the cell of Obama-Prowse. *Vineyard Affidavit* at ¶¶ 4-5. He viewed Scott's grievance as baseless and without merit. *Id.* at ¶ 3.

7. Scott was not certain that Vineyard and Obama-Prowse had an inappropriate sexual relationship. Scott stated:

> I'm not necessarily saying I know they had something going on. That's me putting it together, you know what I'm saying. That's what I put on the grievance. I'm not saying they actually -- I don't know, but I put two and two together.

*Deposition of Deverick Scott* (Doc. No. 31-3) at 17:16-20.

8. Vineyard claims he never discussed the PREA Grievance with any inmate including Inmate Obama-Prowse. *Vineyard Affidavit* at ¶¶ 7-8. Vineyard further claims he never told or gave the impression to Obama-Prowse that he wanted him to take action against Scott for filing the PREA Grievance. *Id.* at ¶ 9.

9. Scott disputes Vineyard's claim that he did not tell Obama-Prowse about the PREA Grievance, and maintains that Vineyard told him he told Obama-Prowse that Scott wrote a grievance naming Obama-Prowse. *Scott's Statement of Disputed Facts* (Doc. No. 39) at ¶ 12; *Scott Deposition* at 12:5-9.

10. On September 19, 2019, the PREA investigation determined that the allegations made by Scott in the PREA Grievance were unfounded and without merit. *Internal Affairs Investigation Memo* (Doc. No. 31-2 at 5).

11.     Scott claims that on September 26, 2019, Obama-Prowse dashed him with urine while the two were in cells next to each other. *Complaint* at 4; *Grievance No. VSM19-02624* (Doc. No. 31-2 at 21-40); *Scott Deposition* at 10:12-18, 11:16-20.  He also claims that Obama-Prowse told Scott that Vineyard told him about the grievance and that he dashed Scott because Scott "snitched on him." *Scott Deposition* at 11:14-25, 12:1-2.

12.     Scott filed 67 grievances between August 25, 2019, when he initiated the PREA Grievance, and January 23, 2020, when he filed this lawsuit. *Inmate Grievances Report* (Doc. No. 31-2 at 40-53).

### IV.  Analysis

#### A.     *Sovereign Immunity*

Vineyard correctly asserts that Scott's monetary claims against him in his official capacity are barred by sovereign immunity.[2]  A suit against a defendant in his or her official capacity is in essence a suit against the State of Arkansas, and any official capacity claim for monetary damages against that defendant is barred by the doctrine of sovereign immunity. *Will v. Michigan Department of State Police, et al.*, 491 U.S. 58, 71 (1989)*; Nix v. Norman*, 879 F.2d 429, 431-432 (8th Cir. 1989).  Accordingly, the undersigned recommends that Vineyard be awarded summary judgment with respect to Scott's official capacity claims.

---

[2] Scott does not seek injunctive relief.  *Second Amended Complaint* at 8-9.

B.   *Qualified Immunity*

Vineyard asserts he is entitled to qualified immunity with respect to Scott's individual capacity claims. Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

To succeed on a § 1983 retaliation claim, a plaintiff must prove: (1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing the activity; and (3) that the adverse action was motivated at least in part by the exercise

of the protected activity. *Gonzalez v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020); *Spencer v. Jackson Cnty.*, 738 F.3d 907, 911 (8th Cir. 2013). Speculative and conclusory, or *de minimis* allegations cannot support a retaliation claim. *See Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam). A plaintiff must also prove a causal connection between the constitutionally protected activity and the adverse action. *Revels v. Vincenz,* 382 F.3d 870, 876 (8th Cir. 2004). Temporal proximity between a protected activity and an adverse action "is relevant but not dispositive." *Wilson v. Northcutt*, 441 F.3d 586, 592 (8th Cir. 2006) (citing *Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1136 (8th Cir. 1999)). To succeed on a retaliation claim, a plaintiff must provide affirmative evidence of a retaliatory motive. *See Haynes v. Stephenson,* 588 F.3d 1152, 1157 (8th Cir. 2009); *see also Wilson*, 441 F.3d at 592 ("[Plaintiff's] belief that [defendant] acted from a retaliatory motive is insufficient.").

Vineyard denies that he told Prowse-Obama about the PREA Grievance. However, for purposes of this decision, the Court views the facts in the light most favorable to Scott and presumes that the facts he asserts are true. While retaliation for the use of a prison grievance procedure is actionable, *see Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990) (per curiam), Scott must also provide evidence that Vineyard told Prowse-Obama about the PREA Grievance with a retaliatory motive. *See Wilson*, 441 F.3d at 592. He has not done so. There is no evidence that

Vineyard told Prowse-Obama about the grievance in an effort to encourage Prowse/Obama to retaliate against him. There is also no evidence, other than Scott's testimony, that Prowse-Obama dashed him or flooded his cell because he learned that Scott had submitted a grievance about him and Vineyard. *See Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir.2005) ("A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor.").

Furthermore, the temporal relationship between the submission of the PREA Grievance and the dashing incident does not provide support for Scott's claim. The PREA Grievance was filed August 25, 2019, and Prowse-Obama allegedly dashed Scott on September 26, 2019. Scott has provided no evidence of a causal relationship between the filing of the grievance and the alleged retaliatory action.

Finally, Vineyard argues that had he told Prowse-Obama about the grievance, it would not chill a person of ordinary firmness from continuing to file lawsuits or using the prison's grievance procedures. "The ordinary-firmness test is designed to weed out trivial matters from substantial violations of the First Amendment." *Gonzalez*, 971 F.3d at 744 (citing *Santiago*, 707 at 992). "'The test is an objective one, not subjective. The question is.... [w]hat would a person of 'ordinary firmness' have done in reaction to the [adverse action]?'" *Id.* (quoting *Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003)). While the test is an objective one, "how

the plaintiff acted might be evidence of what a reasonable person would have done." *Garcia*, 348 F.3d at 729. See *Gonzalez*, 971 F.3d at 745 (considering plaintiff's actions in response to the alleged retaliation as evidence of what a person of ordinary firmness would have done and affirming grant of summary judgment); *Naucke v. City of Park Hills*, 284 F.3d 923, 928 (8th Cir. 2002) (noting that plaintiff continued to exercise her First Amendment rights despite the retaliatory acts of the defendants).

In asserting that a person of ordinary firmness would not be chilled from continuing to file lawsuits or grievances in this matter, Vineyard offers evidence that Scott filed 67 grievances between August 25, 2019, when Scott initiated the PREA Grievance, and January 23, 2020, when he filed this lawsuit. *Inmate Grievances Report* (Doc. No. 31-2 at 40-53). The Court has considered Scott's actions in continuing to file grievances after the events of September 26, 2019, as evidence of what a person of ordinary firmness might do. Under all of the circumstances presented, the Court finds the alleged retaliatory action taken against Scott would not chill a person of ordinary firmness from continuing to exercise his First Amendment rights. Accordingly, Vineyard is entitled to summary judgment on Scott's retaliation claim.

## V.  Conclusion

For the reasons stated herein, the undersigned recommends:

1. Vineyard's motion for summary judgment (Doc. No. 31) be granted;

2.     Scott's claims be dismissed with prejudice.

DATED this 17th day of June, 2022.

_____
UNITED STATES MAGISTRATE JUDGE