IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

DEVERICK SCOTT
ADC #131042                                                          PLAINTIFF

v.                      No. 4:20-cv-92-DPM

JONATHAN VINEYARD,
Corporal, VSM Unit, ADC                                              DEFENDANT

ORDER

1.  On *de novo* review, the Court partly adopts and partly declines the recommendation, *Doc. 42*, and partly overrules and partly sustains Scott's objections, *Doc. 43*. FED. R. CIV. P. 72(b)(3).

2.  Scott's claim against Vineyard in his official capacity is dismissed with prejudice because that claim is barred by sovereign immunity. *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989).

3.  Scott's First Amendment claim against Vineyard is solid. He says that Vineyard's unauthorized disclosure of his grievance to another prisoner (Obama-Prowse) was retaliatory. Viewing the disputed material facts in the light most favorable to Scott, *Oglesby v. Lesan*, 929 F.3d 526, 532 (8th Cir. 2019), Vineyard admitted to Scott that he told Obama-Prowse that Scott wrote a grievance about the two of them, but did not give Obama-Prowse any details about that grievance. *Doc. 31-3 at 18, 22, 24–25; compare Doc. 31-1*. The relevant ADC policy

prohibits guards from discussing grievances with inmates. *Doc. 31-3 at 13*. Vineyard argues, however, that Scott has no proof that Vineyard's disclosure was motivated by retaliatory animus or that it caused Obama-Prowse to dash Scott with urine. Pointing to the many, many grievances Scott filed after the urine dashing, Vineyard says that a person of ordinary firmness wouldn't be discouraged from filing grievances involving fellow prisoners even if he knew those grievances would be disclosed. The Court disagrees.

There is enough record evidence to convince a reasonable juror that Vineyard's disclosure to Obama-Prowse was motivated by Scott's grievance against him. Vineyard doesn't offer a nonretaliatory motive for the disclosure because he says that he didn't tell Obama-Prowse about the grievance at all. *Doc. 31-1*. Considering all the circumstances, and without any alternative explanation, it is reasonable to infer that Vineyard acted with an illicit motive. *Spencer v. Jackson County*, 738 F.3d 907, 913 (8th Cir. 2013).

About a month passed between Scott's grievance and Obama-Prowse's dashing him with urine. Even assuming that a month is too long to establish a connection between a protected activity and a retaliatory act, Vineyard's argument on causation misidentifies the relevant act. *Doc. 32 at 5*. As Scott points out, his claim is about Vineyard's unauthorized and allegedly unconstitutional retaliatory disclosure, not Obama-Prowse's assault. *Doc. 43 at 1*. The timing of

that disclosure isn't clear. But it is undisputed that, if it occurred, it must have happened less than a month after Scott filed his grievance against Vineyard and Obama-Prowse. The length of time between Scott's grievance and Vineyard's alleged disclosure doesn't eliminate causation as a matter of law.

Scott says that Vineyard's disclosure would chill a person of ordinary firmness from filing grievances against him and other inmates. Vineyard disagrees, pointing to Scott's sixty-seven post-September 2019 grievances as evidence of what a person of ordinary firmness might do in the circumstances. *Doc. 31-2 at 41–53*. The standard is an objective one: how would the hypothetical reasonable inmate have reacted to Vineyard's disclosure? *Gonzalez v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020). Disclosures like Vineyard's place inmates at a substantial risk of harm. *E.g.*, *Reeves v. King*, 774 F.3d 430, 432 (8th Cir. 2014); *Irving v. Dormire*, 519 F.3d 441, 451 (8th Cir. 2008). Scott's grievance-related speech was certainly not chilled in general. A jury could reasonably conclude, however, that being subjected to a substantial risk of harm would chill an inmate of ordinary firmness. Vineyard hasn't said whether any of Scott's numerous post-dash grievances affected the lives of other inmates or otherwise could have placed Scott at substantial risk of harm. Scott's extraordinary perseverance in grievances and litigation is not necessarily determinative. He has made a *prima facie* case of retaliation.

4. Vineyard says he is entitled to qualified immunity. That is a good defense if the facts, viewed in the light most favorable to Scott, fail to make out a constitutional violation that was clearly established at the time of Vineyard's alleged misconduct. *Watson v. Boyd*, 2 F.4th 1106, 1109 (8th Cir. 2021).

The Court of Appeals hasn't squarely addressed whether a prison guard's unauthorized and retaliatory disclosure of one prisoner's grievance to another prisoner violates the First Amendment. Non-binding authority suggests that it does. *Williams v. Horner*, 403 F. Appx. 138, 141 (8th Cir. 2010) (unpublished *per curiam*). And there's no robust and overwhelming out-of-circuit consensus one way or the other. *Graham v. Barnette*, 5 F.4th 872, 887 (8th Cir. 2021). The Court must therefore decide if the contours of Scott's First Amendment right "were sufficiently definite that any reasonable official in [Vineyard's] shoes would have understood that he was violating it." *McDaniel v. Neal*, 44 F.4th 1085, 1091-92 (8th Cir. 2022) (internal quotations and citation omitted).

As of September 2019, Vineyard was on notice that he could not do anything with an illicit motive that would chill Scott's grievance-related speech. *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001). He should also have been aware that disclosing Scott's grievance to Obama-Prowse placed Scott at substantial risk of serious harm. *Irving*, 519 F.3d at 451. The Court recognizes that it must ordinarily eschew

generalities in deciding questions of qualified immunity. *McDaniel*, 44 F.4th at 1091. But, unlike with the Fourth Amendment's conduct-specific prohibition against excessive force, it is an illicit and retaliatory intent to stifle protected speech that defines the outer limits of what the First Amendment will allow. *Cody*, 256 F.3d at 771. If it were otherwise, qualified immunity would be a strong incentive for wrong-minded ingenuity. Because a reasonable juror could conclude on this record that Vineyard acted with the intent to discourage Scott from filing grievances, Vineyard is not entitled to qualified immunity.

5. A Final Scheduling Order setting this case for a jury trial on 6 February 2023 will issue. With the parties' consent, however, the Magistrate Judge could hold a trial much sooner. The Court therefore encourages the parties to consider consenting to a trial before the Magistrate Judge. 28 U.S.C. § 636(c)(1). The Court directs the Clerk to send the parties another set of consent forms.

6. In addition, the parties should also consider whether they both want to participate in a settlement conference. If so, the Court will refer the case to Magistrate Judge Beth Deere, who is on recall status and has no other connection with this case.

\* \* \*

Vineyard's motion, *Doc. 31*, is partly granted and partly denied. Scott's claim against Vineyard in his official capacity is dismissed with prejudice. Scott's claim against Vineyard in his individual capacity will go forward.

So Ordered.

*[signature]*
D.P. Marshall Jr.
United States District Judge

19 September 2022